**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                                        No. CR 20-1439 JB

GABBY PLATERO,

       Defendant.

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** comes before the Court on the Defendant's Objections to PSR, filed February 16, 2021 (Doc. 32)("Objection").  The primary issue is whether the Court can apply a 4-level sentencing enhancement under United States Sentencing Guidelines ("U.S.S.G.") § 2K2.1(b)(6)(B), because Defendant Gabby Platero possessed a firearm "in connection with another felony offense" by committing either: (i) aggravated battery with a deadly weapon; (ii) aggravated assault with a deadly weapon; or (iii) tampering with evidence.  The Court concludes that Platero used or possessed a firearm in connection with another felony offense, because: (i) Platero did not act in self-defense when he shot the victim, Jefferson Padilla; (ii) Platero assaulted Padilla with a gun; and (iii) Platero tampered with evidence.  The Court will, therefore, overrule the Objection.

<u>**FINDINGS OF FACT**</u>

The Court takes its facts from the Presentence Investigation Report, filed January 12, 2021 (Doc. 27)("PSR"), the Objection, the United States' Response to Defendant's Objection to the Pre-Sentence Report, filed February 26, 2021 (Doc. 33)("Response"), and the lapel videos and audio recordings of the incident, <u>see</u> Notice of Lodging of Video, filed August 9, 2021 (Doc. 34).  The Court makes its findings of fact by a preponderance of the evidence.  See <u>United States v. Williams</u>,

No. CR. 17-2556 JB, 2020 WL 4016108, at *6 (D.N.M. July 16, 2020)(Browning, J.)(citing United

States v. Olsen, 519 F.3d 1096, 1105 (10th Cir. 2008)).  Accord United States v. Zapata, 546 F.3d

1179, 1192 (10th Cir. 2008). The Court may rely on hearsay if the hearsay is reliable.  See United

States v. Banda, 168 F. App'x 284, 289 (10th Cir. 2006)("[T]here is no prohibition on considering

hearsay testimony at sentencing, provided it bears indicia of reliability.").[1]  The evidence and

information upon which the Court relies must have sufficient indicia of reliability.  See U.S.S.G.

§ 6A1.3 ("In resolving any dispute concerning a factor important to the sentencing determination,

the court may consider relevant information without regard to its admissibility under the rules of

evidence applicable at trial, provided that the information has sufficient indicia of reliability to

support its probable accuracy.").

     1.      On March 13, 2020, there was a shooting at an apartment complex in northeastern

Albuquerque, New Mexico; law enforcement officers were dispatched.  See PSR ¶ 10, at 4.

     2.      Platero was drinking and partying with Jefferson Padilla, the victim, because they

were celebrating.  See PSR ¶ 12 at 5.

     3.      Platero was "heavy intoxicated."  Response at 3.

---

[1]United States v. Banda is an unpublished opinion, but the Court can rely on an unpublished opinion from the United States Court of Appeals for the Tenth Circuit to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A)("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent. . . .  And we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that United States v. Banda, has persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

4.      Platero "wasn't playing with the gun very much," but "showed [Padilla] how to take care of it and [Padilla] wiped [Padilla's] fingerprints off it and everything and he was talking about everybody coming around there and (inaudible) trying to hurt him or rob him . . . ." Padilla/Officer Tr. ¶ 13 at 5; id. ¶¶ 16-18, at 1.

5.      Platero "invited [Padilla] for a few drinks and then he started fucking acting like a dumb ass," Platero/Officer Tr. ¶ 23, at 4, and Platero "told him like dude cut it out man, shut the fuck up man, you have a big mouth and shit like that," Platero/Officer Tr. ¶¶ 9-10, at 5.

6.      Platero and Padilla "got into a little argument . . . [and Padilla] told [Platero] go ahead and shoot [Padilla] like you know, [Platero] pointed it at [Padilla's] head and [Platero] put it at [Padilla's] leg and [Platero] shot [Padilla] . . . ."  Padilla/Officer Tr. ¶¶ 20-22 at 1.

7.      Padilla "ain't scared of fucking dumb ass."  Padilla/Officer Tr. ¶¶ 20-22 at 1.

8.      Padilla began "running his mouth," and lunged at Platero.  See PSR ¶ 12 at 5.

9.      Padilla is much bigger than Platero.  See Objection at 3.

10.     Padilla "tried to overpower" Platero, because Padilla is bigger than Platero. Transcript of Body Camera Footage ¶ 16, at 2, filed February 16, 2021 (Doc. 32-1)("Platero/Officer Tr.").

11.     Padilla "wrestle, try to . . . out power [Platero] and then he tried to, um, overpower [Platero]."  Platero/Officer Tr. ¶¶ 5-6, at 3.

12.     Platero "shot Padilla in the leg in order to stop the attack."  Objection at 3.

13.     Platero "never provided a coherent statement that would indicate that he was in any immediate danger of death or great bodily harm."  Response at 3.

14.     When asked why he told Platero to shoot him, Padilla responded: "I was bluffing." Padilla/Officer Tr. ¶ 24 at 1.

15.     Padilla was in Platero's apartment when his Platero became upset with him and shot him in the leg.  See PSR ¶ 10, at 4.

16.     Padilla told law enforcement that Platero, the shooter, was his friend.  See PSR ¶ 10, at 4.

17.     When Padilla was on the telephone with 911 dispatch, Platero pointed the gun at him again.  See Recording of 911 Call at 11:55-12:15, filed August 9, 2021 (Doc. 34)("911 Call").

18.     Padilla was "talking to him right now" as Platero pointed the gun at him.  911 Call at 12:27.

19.     For a moment when Padilla was on the telephone with 911 dispatch, Platero was "right [t]here."  911 Call at 12:32.

20.     Police officers had not yet arrived.  See 911 Call at 11:55-12:15, filed August 9, 2021 (Doc. 34).

21.     Platero left his apartment, "attempted to run from the police, and attempted to hide the evidence by tossing the gun in a dumpster."  Response at 4.

22.     Platero "took off and ditched the gun, and came back . . . and told [Padilla] not to say shit."  Reply at 2.

23.     When officers arrived, they met with Padilla; Padilla was unable to move, because he had been shot in the leg.  See PSR ¶ 10, at 4.

24.     Padilla was "relatively calm" with officers, because he was "focused on his concern for his leg."  Response at 4.

25.     Padilla was shot just below his left knee.  See PSR ¶ 10, at 5.

26.     Padilla was transported to the University of New Mexico Hospital for non-life-threatening injuries.  See PSR ¶ 10, at 5.

- 4 -

27.     Officers then ordered people out of the apartment complex so they could search for Platero.  See PSR ¶ 11 at 5.

28.     Officers noticed a man matching Platero's description walking outside walking outside near the apartment complex.  See PSR ¶ 11 at 5.

29.     The officers "began giving verbal commands to Platero."  PSR ¶ 11 at 5.

30.     Platero threw something silver that the officers believed to be a firearm into the air.  See PSR ¶ 11 at 5.

31.     Soon after, officers apprehended Platero without incident.  See PSR ¶ 11 at 5.

32.     Officers then began to question Platero.  See PSR ¶ 12 at 5.[2]

33.     Officers found the firearm that Platero had used.  See PSR ¶ 12 at 5.

34.     The firearm is a silver Hi-Standard .22 caliber revolver, serial number 1182341, loaded with four rounds of ammunition.  See PSR ¶ 12 at 5.

35.     The firearm was manufactured in Connecticut.  See PSR ¶ 13 at 5.

36.     Law enforcement officers tested the firearm and found that it functioned as designed.  See PSR ¶ 13 at 5.

37.     At the hospital, Padilla was interviewed by police.  See Transcript of Body Camera Footage 1, filed February 16, 2021 (Doc. 32-2)("Padilla/Officer Tr.").

38.     In State court, Platero was charged with Negligent Use of a Deadly Weapon, in violation of N.M.S.A. §§ 30-7-4(A)(1) and 31-19, Aggravated Battery with a Deadly Weapon, in violation of N.M.S.A. § 30-3-5(C), Tampering with Evidence (Highest Crime as Third, Fourth, or Indeterminate Degree Felony), in violation of N.M.S.A. § 30-22-5, and Receipt, Transportation,

---

[2]Platero did not tell the officers anything more about what happened that night.  See PSR ¶ 12 at 5.

or Possession of a Firearm by a Felon, in violation of N.M.S.A. §§ 30-7-16(A) and (B).  See PSR ¶ 12 at 5.

39.     The victim, Padilla, has prior convictions for Assault with a Dangerous Weapon, in violation of 18 U.S.C. §§ 113(a)(3) and 1153, Aggravated Battery with a Deadly Weapon, in violation of N.M.S.A. § 30-3-5(C), and Aggravated Assault with a Deadly Weapon, in violation of N.M.S.A. § 30-3-2(A).  See Objection at 4.

## PROCEDURAL BACKGROUND

On October 13, 2020, Platero pled guilty to one count of being a felon-in-possession, in violation of 18 U.S.C. §§ 922(g)(a) and 924.  See Plea Agreement at 2, filed October 16, 2020 (Doc. 25).  The United States Probation Office ("USPO") filed the PSR on January 12, 2021.  See PSR at 1.  In the PSR, the USPO calculates Platero's total offense level to be 21, including a 4-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for using or possessing a firearm in connection to another felony offense.  See PSR ¶ 20, at 6.  The PSR does not state what the other felony offense is.  See PSR ¶¶ 1-79 at 1-15.

### 1.       The Objection.

Platero objects to the USPO's application of U.S.S.G. § 2K2.1(b)(6)(B).  See Objection at 1.  Platero notes that the PSR does not indicate on which other offense the USPO relies to apply U.S.S.G. § 2K2.1(b)(6)(B), but states that the USPO "informed counsel that it is 'relying on the information outlined in paragraph 12 of the PSR which indicated the charges that were brought by the state in this offense.'"  Objection at 1 (no citation for quotation).  Paragraph 12 of the PSR notes that Platero was charged with Negligent Use of a Deadly Weapon, in violation of N.M.S.A. §§ 30-7-4(A)(1) and 31-19, Aggravated Battery with a Deadly Weapon, in violation of N.M.S.A. § 30-3-5(C).  See PSR ¶ 12, at 5.  Paragraph 12 does not state that Platero was charged with

Tampering with Evidence (Highest Crime as Third, Fourth, or Indeterminate Degree Felony), in violation of N.M.S.A. § 30-22-5, and Receipt, Transportation, or Possession of a Firearm by a Felon, in violation of N.M.S.A. §§ 30-7-16(A) and (B) in the same case. See PSR ¶ 12 at 5; State v. Gabby Platero, D-202-CR-2020-00950 County of Bernalillo, Second Judicial District Court, State of New Mexico, filed May 1, 2020. Platero notes that the United States "has informed counsel that it will rely on aggravated battery with a deadly weapon based on the offense conduct outlined in" paragraphs 10-14 of the PSR, "or alternatively, tampering with evidence." Objection at 1.

First, Platero argues that U.S.S.G. § 2K2.1(b)(6)(B)'s 4-level enhancement does not apply for aggravated battery with a deadly weapon, because "Platero was acting in self-defense when he shot" Padilla. Objection at 1. Platero asserts that, because, under New Mexico law, the State has the burden to prove that a defendant did not act in self-defense, the United States cannot show by a preponderance of the evidence that Platero did not act in self-defense. See Objection at 3. Platero argues that Padilla attacked him during an argument, so Platero responded by shooting Platero in self-defense. See Objection at 2. Specifically, Platero notes that he initially told police that Padilla "'lunged' at him and tried to 'overpower' him." Objection at 3 (no citation for quotations). Because "Padilla is much bigger than Platero," Platero "shot Padilla in the leg in order to stop the attack." Objection at 3. Platero also argues that Padilla's criminal history and history of head injuries and methamphetamine use supports his argument that Padilla was the primary aggressor. See Objection at 4.

Second, Platero argues that U.S.S.G. § 2K2.1(b)(6)(B)'s 4-level enhancement does not apply for tampering with evidence, because "the highest level of tampering with evidence is a misdemeanor or undetermined." Objection at 1. Platero argues that U.S.S.G. § 2K2.1(b)(6)(B)'s

4-level enhancement cannot apply to Platero, because there is insufficient evidence to show that Platero committed felony tampering with evidence, as opposed to misdemeanor tampering with evidence.  See Objection at 4-5.  Under New Mexico law, tampering with evidence can either be a felony or a misdemeanor.  See N.M.S.A. § 30-22-5.  Platero asserts that "once the Court determines that aggravated battery with a deadly weapon does not support the adjustment, the only sections of § 30-22-5 that might apply are (B)(3) or (B)(4)," but (B)(3) is "clearly a misdemeanor," and the Supreme Court of New Mexico's holding in State v. Radosevich, 2018 NMSC-028 ¶2, 419 P.3d 176, which concluded that tampering with evidence is punishable only at the lowest classification when the level of the underlying crime cannot be determined, limits (B)(4). Objection at 5.  As a result, Platero contends, the tampering with evidence violation cannot be a felony, and cannot, therefore, support the U.S.S.G. § 2K2.1(b)(6)(B) sentencing enhancement.  See Objection at 5-6.

   **2.**  **The Response.**

   The United States responds to Platero's objection.  See United States' Response to Defendant's Objection to the Pre-Sentence Report, filed February 26, 2021 (Doc. 33)("Response").  First, the United States argues that "the evidence is sufficient to impose the enhancement for the felony offense of aggravated battery with a deadly weapon."  Response at 2. The United States notes that New Mexico law "places the burden on the state to prove Defendant did not act in self-defense."  Response at 3.  According to the United States, there is sufficient evidence to support a finding that Platero did not act in self-defense, because Padilla was not armed, and Platero was heavily intoxicated, and he "referenced 'warning' [Padilla] for the way he was talking to" him.  Response at 3 (no citation for quotation).

   The United States argues that, although Padilla "baited" Platero by "verbally offending

him," Padilla's insult did not give Platero "the right to use deadly force."  Response at 3-4.  The United States stresses that Padilla was "relatively calm" with officers, because he was "focused on his concern for his leg."  Response at 4.  In addition, the United States asserts that Platero's actions "indicate a heavy consciousness of guilt" and rebut a self-defense claim.  Response at 4.  Platero left his apartment, "attempted to run from the police, and attempted to hide the evidence by tossing the gun in a dumpster."  Response at 4.

Second, the United States argues that Platero assaulted Padilla with a deadly weapon, in violation of N.M.S.A. § 30-3-2(A).  See Response at 4.  The United States argues that, separate from the shooting, Platero assaulted Padilla when he pointed the gun at him a second time when Padilla was on the telephone with 911 operators.  See Response at 5.  While on the telephone with 911 operators, Padilla "tells the operator that the same person who shot him was actively pointing a gun at him."  Response at 5.  Padilla "responded that he couldn't walk [away] because of his injuries."  Response at 5.  At this point, the United States alleges, Padilla "posed no threat" to Platero, because he was no longer in Platero's apartment and could barely walk.  Response at 5.

Third, the United States responds to Platero's argument that he did not tamper with evidence, or, if he did, that it was not a felony.  See Response at 5.  The United States asserts that Platero tampered with evidence, and it was a felony, because "it is more likely than not that" Platero "tried to hide the firearm from law enforcement to reduce the evidence against him and prevent his conviction of those offenses."  Response at 5.  Last, the United States stresses that "conviction of the underlying crime is not an element of the offense" of tampering with evidence. Response at 6.

**3.    The Reply.**

Platero replies to the United States.  See Reply to Response to Objections to PSR, filed

March 8, 2021 (Doc. 36)("Reply").  First, Platero argues that he could not have committed aggravated assault with a deadly weapon, because Padilla contradicts his own assertion that Platero pointed the gun at him a second time.  Reply at 2.  Platero argues that, after Padilla finished speaking with 911 -- when he told the operator that Platero again was pointing the gun at him -- Padilla told law enforcement officers that Platero "took off and ditched the gun, and came back (inaudible) and told me not to say shit."  Reply at 2.  According to Platero, this statement contradicts the earlier statement that Platero pointed the gun at him a second time.  See Reply at 2.  In addition, Platero asserts that he could not have pointed the gun at Padilla while he was on the telephone with 911, because "Platero was not back in his apartment, and was in fact located and detained at another area of the apartment complex."  Reply at 2.  Second, Platero argues that the United States "offers no direct evidence" to contradict Platero's statement that he was acting in self-defense and Padilla's statements are not reliable.  Reply at 2-3.  Third, Platero argues that the United States "misinterprets" his tampering-with-evidence argument.  Reply at 3.  Platero stresses that he argues that, "under the circumstances here, . . .  the only possible level of tampering that can apply under New Mexico law is misdemeanor," which does not satisfy U.S.S.G. § 2K2.1(b)(6)(B)'s felony requirement.  Reply at 3.

## RELEVANT LAW REGARDING THE GUIDELINES

U.S.S.G. § 2K2.1(b)(6)(B) provides for a 4-level enhancement "[i]f the defendant . . . used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense."  U.S.S.G. § 2K2.1(b)(6)(B).  "[A]nother felony offense" "means any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one

- 10 -

year, regardless of whether a criminal charge was brought, or a conviction obtained."  U.S.S.G. § 2K2.1 cmt. 14(C).  See United States v. Gross, No. CR 16-0454 JB, 2016 WL 9021829, at *15 (D.N.M. Dec. 16, 2016)(Browning, J.)("An enhancement under § 2K2.1(b)(6) may be applied even though the felony in connection with which the firearm is possessed was not an offense for which the defendant was convicted."  (citing United States v. Gambino-Zavala, 539 F.3d 1221, 1230 n.3 (10th Cir. 2008))).  Application note 14(A) to U.S.S.G. § 2K2.1 specifies that the use or possession is "in connection with" another felony offense "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense."  U.S.S.G. § 2K2.1 cmt. 14(A). The United States Court of Appeals for the Tenth Circuit has explained: "The plain and commonly understood meaning of 'facilitate' is to make easier."  United States v. Marrufo, 661 F.3d 1204, 1207 (10th Cir. 2011).  See United States v. Serna, 405 F. Supp. 3d 1107, 1110 (D.N.M. 2019)(Browning, J.).

An enhancement under U.S.S.G. § 2K2.1(b)(6) may be applied even though the felony in connection with which the firearm is possessed is not an offense for which the defendant is convicted.  See United States v. Gambino-Zavala, 539 F.3d at 1230 n. 3.  In United States v. Magallanez, 408 F.3d 672 (10th Cir. 2005), the Tenth Circuit held that, even after United States v. Booker, 543 U.S. 220 (2005), as long as the guidelines are considered advisory, facts relevant to sentencing still need be proved only by a preponderance of the evidence.  See United States v. Magallanez, 408 F.3d at 684-85.  See also United States v. Dalton, 409 F.3d 1247, 1252 (10th Cir. 2005)("Booker therefore does not render judicial factfinding by a preponderance of the evidence per se unconstitutional.").

U.S.S.G. § 2K2.1(b)(6)(B)'s 4-level enhancement has four distinct elements, and "[t]he United States must prove that the defendant: (i) used or possessed; (ii) any firearm or ammunition;

(iii) in connection with; (iv) another felony offense." United States v. Kepler, No. CR. 11-1946 JB, 2012 WL 592422, at *5 (D.N.M. Feb. 14, 2012)(Browning, J.)(citing U.S.S.G. § 2K2.1(b)(6)). In United States v. Kepler, the United States and the defendant stipulated that § 2K2.1(b)(6)'s 4-level enhancement did not apply, and the Court accepted the stipulation, because there was a lack of evidence regarding whether the defendant or some other occupant in the house owned the locked box that contained methamphetamine and a handgun. See United States v. Kepler, 2012 WL 592422, at *6. The Court explained:

> Given that the Court has no ability to gather or present evidence to support a sentencing enhancement, the Court is dependent in many ways on the United States to assess the strength of its arguments and evaluate whether it can prove that a particular enhancement applies. While it is possible that the methamphetamine is attributable to [the defendant], the evidence before the Court does not support a factual finding to that effect by a preponderance of the evidence. Without proof that [the defendant] committed another felony offense, the United States cannot establish that an enhancement under U.S.S.G. § 2K2.1(b)(6) applies.

United States v. Kepler, 2012 WL 592422, at *6. See United States v Pacheco, No. CR 13-2643 JB, 2014 WL 3421063, at *7 (D.N.M. July 8, 2014)(Browning, J.).

## ANALYSIS

The Court concludes that Platero used or possessed a firearm in connection to another felony offense, because: (i) Platero did not act in self-defense; (ii) Platero assaulted J.P. with a firearm; and (iii) Platero tampered with evidence. Under U.S.S.G. § 2K2.1(b)(6)(B), Platero's base offense level is enhanced by 4-levels if he "used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). Here, there are three possible other felony offenses: (i) aggravated battery with a deadly weapon; (ii) aggravated assault with a deadly weapon; and (iii) tampering with evidence. See Response at 2-6.

First, under New Mexico law, to prove aggravated battery with a deadly weapon, the State has the burden to prove that a defendant did not act in self-defense, see State v. Acosta, 1997-NMCA-035, ¶ 21, 123 N.M. 273, 280-81, 939 P.2d 1081, 1088-89.  The elements of self-defense are: "'(1) an appearance of immediate danger of death or great bodily harm to the defendant, (2) the defendant was in fact put in fear by the apparent danger, and (3) a reasonable person in the same circumstances would have reacted similarly.'"  State v. Emmons, 2007-NMCA-082, ¶ 12, 141 N.M. 875, 878, 161 P.3d 920, 923 (quoting State v. Abeyta, 120 N.M. 223, 239, 901 P.2d 164, 170 (1995)).

Second, under New Mexico law, to prove aggravated assault with a deadly weapon, the State must show that the defendant: (i) intended to commit battery by (a) intentionally touching or applying force; (b) in a rude, insolent, or angry manner; (ii) began to do an act which constituted a substantial part of the battery but failed to commit the battery; and (iii) used a weapon that, when used as a weapon, would cause death or great bodily harm.  See N.M.S.A. § 30-3-2(A); N.M.R.A CR UJI 14-304;.  Third, under New Mexico law, to prove tampering with evidence, the State must show that the defendant: (i) destroyed, changed, hid, placed, or fabricated any physical evidence; (ii) with the intent to (a) prevent the apprehension, prosecution or conviction of any person, or (b) throw suspicion of the commission of a crime upon another.  See N.M.S.A. § 30-22-5(A). Further, N.M.S.A. § 30-22-5 states:

B.    Whoever commits tampering with evidence shall be punished as follows:

(1)    if the highest crime for which tampering with evidence is committed is a capital or first degree felony or a second degree felony, the person committing tampering with evidence is guilty of a third degree felony;

(2)    if the highest crime for which tampering with evidence is committed is a third degree felony or a fourth degree felony, the person committing tampering with evidence is guilty of a fourth degree

- 13 -

felony;

(3)     if the highest crime for which tampering with evidence is committed is a misdemeanor or a petty misdemeanor, the person committing tampering with evidence is guilty of a petty misdemeanor; and

(4)     if the highest crime for which tampering with evidence is committed is indeterminate, the person committing tampering with evidence is guilty of a fourth degree felony.

N.M.S.A. § 30-22-5(B).

Here, first, the Platero did not act in self-defense.   Under New Mexico law, once a defendant produces evidence of self-defense, the burden shifts to the state to disprove the self-defense claim.  See State v. Acosta, 1997-NMCA-035, ¶ 21, 123 N.M. 273, 279-80, 939 P.2d 1081, 1087-88.  A self-defense claim is not available to someone who instigated the conflict.  See State v. Lucero, 1998-NMSC-044 ¶ 7, 126 N.M. 552, 554, 972 P.2d 1143, 1145.  There is no evidence that leads the Court to believe that either Platero or Padilla started the argument, but, because Padilla escalated the argument by lunging at Platero and telling him to "go ahead and shoot me," Padilla instigated the physical conflict.  Padilla/Officer Tr. ¶¶ 20-21, at 1.  Platero asserts self-defense and stresses that Padilla is larger than Platero.  See Objection at 3.  Platero argues that he "shot Padilla in the leg in order to stop the attack."  Objection at 3.

There is not much evidence about what happened inside Platero's apartment that caused Platero to shoot Padilla in the leg.  See PSR ¶¶ 1-79 at 1-15; Objection at 1-14; Response at 1-7; Reply at 1-3; Platero/Officer Tr. at 1-6; Padilla/Officer Tr. at 1-2.  Platero asserts, however, that Padilla "tried to lunge" at him, Platero/Officer Tr. ¶ 10, at 1, "tried to overpower" him, Platero/Officer Tr. ¶ 16, at 2, and was "fucking acting like a dumb ass," Platero/Officer Tr. ¶ 23, at 4.  When a police officer asked Platero if Padilla was trying to fight him, Platero responded, "Yeah," and said that he told Padilla: "Don't act like that man."  Platero/Officer Tr. ¶¶ 1-5, at 5.

- 14 -

Platero says that he told Padilla: "[L]ike dude man cut it out man, shut the fuck up man, you have a big mouth and shit like that," Platero/Officer Tr. ¶¶ 9-10, at 5, but that he did not say it "in a threatful way anything like that," Platero/Officer Tr. ¶ 14, at 5.  In addition, Padilla antagonized Platero when he told Platero to "go ahead and shoot [me]," because he "ain't scared of fucking dumb ass."  Padilla/Officer Tr. ¶¶ 20-21, at 1.

The United States contends that Platero's "attempt to hide the evidence by tossing the firearm in the dumpster" and his statement that the shooting "was over a verbal disagreement" "discredit his self-defense claim."  Addendum at 3.  Neither attempting to hide evidence nor the verbal disagreement, however, bears on the self-defense elements.  See State v. Emmons, 2007-NMCA-082, ¶ 12, 141 N.M. 875, 878, 161 P.3d 920, 923.  Because Platero was showing Padilla the gun, and Padilla is larger than Platero, when Padilla lunged at Platero, there was an appearance of immediate danger to Platero.  At this point, Platero was not threatening Padilla with the gun, but was showing Padilla "how to take care of [the gun]."  Padilla/Officer Tr. ¶ 16, at 1.  When Padilla lunged at Platero, Platero responded by shooting Padilla.  Objection at 3.  Under New Mexico law, a person acts in self-defines if a reasonable person in the same circumstances would have reacted similarly.  See State v. Emmons, 2007-NMCA-082, ¶ 12, 141 N.M. 875, 878, 161 P.3d 920, 923.  Although Padilla lunged at Platero, it was not reasonable for Platero to respond by shooting him.  The Court concludes by a preponderance of the evidence, therefore, that Platero did not act in self-defense.  As a result, Platero used or possessed a firearm "in connection with" aggravated battery with a deadly weapon.  U.S.S.G. § 2K2.1(b)(6)(B).

Second, the Court concludes that Platero used or possessed a firearm "in connection with" aggravated assault with a deadly weapon under U.S.S.G. § 2K2.1(b)(6)(B), because Platero pointed the gun at Padilla a second time while Padilla was on the phone with 911 operators.  See

N.M.S.A. § 30-3-2(A).  When he was on the telephone with the 911 operator, Padilla told the operator that the man who shot him was pointing the gun at him again.  See 911 Call at 11:55-12:15.  In response, the 911 operator asked Padilla if he was "talking to him right now."  911 Call at 12:27.  There is a second, inaudible voice on the recording, and Padilla responds: "Yeah, he's right here."  911 Call at 12:32.  As the United States alleges, this incident was "separate and distinct" from the shooting.  Response at 5.  In the Reply, Platero argues that he did not assault Padilla with a gun, and that Padilla's statement could not be true, because Padilla "contradicted himself."  Reply at 2.  In particular, Platero alleges that he could not have pointed his gun at Padilla, because Platero "took off and ditched the gun, and came back . . . and told me not to say shit."  Reply at 2.  Platero avers that this statement contradicts Padilla's assertion on the 911 call.  See Reply at 2.  In addition, Platero asserts that, at the time of the 911 call, he was "in fact located and detained at another area of the apartment complex."  Reply at 2.  When Padilla was on the telephone with 911, however, the police had not yet arrived.  See 911 Call at 11:55-12:15, filed August 9, 2021 (Doc. 34).  In addition, police had arrived when Platero tried to get rid of the gun.  See Axon_Body_2_Video_2020-03-13-1909(1) at 39:30, filed August 9, 2021 (Doc. 34).  Because Platero's version of the events do not accurately reflect the timeline, the Court concludes by a preponderance of the evidence that Platero assaulted Padilla with a gun during the 911 call.  See N.M.S.A. § 30-3-2(A).  The Court concludes, therefore, that Platero used or possessed a firearm "in connection with" aggravated assault with a deadly weapon.  U.S.S.G. § 2K2.1(b)(6)(B).

Third, because Platero assaulted Padilla with a gun, a fourth-degree felony, see N.M.S.A. § 30-3-2(A), Platero committed felony tampering with evidence when he attempted to get rid of the gun,  see N.M.S.A. § 30-22-5.  When police arrived -- and after Platero shot Padilla -- Platero attempted to get rid of the gun by tossing it into a dumpster.  See PSR ¶ 10 at 5;

- 16 -

Axon_Body_2_Video_2020-03-13-1909(1) at 39:30, filed August 9, 2021 (Doc. 34).   Platero

nevertheless argues that, if he tampered with evidence, it was only a misdemeanor under N.M.S.A.

§ 30-22-5(B), because he did not commit aggravated battery with a deadly weapon. Objection at

5-6.   Platero does not offer a response to the United States' contention that Platero tampered with

evidence for a possible aggravated assault with a deadly weapon.   See Objection at 1-6; Reply at

1-3.   Rather, in the Reply, Platero reiterates his argument that, "under the circumstances here,

. . . the only possible level of tampering that can apply under New Mexico law is misdemeanor."

Reply at 3.   Under New Mexico law, aggravated assault with a deadly weapon is fourth degree

felony.   See N.M.S.A. § 30-3-2(A).   Tampering with evidence for a fourth degree felony is a fourth

degree felony.   See N.M.S.A. § 30-22-5(B)(2).   Attempting to hide a gun just used to assault

someone "to prevent . . . the prosecution" of the assault is, therefore, a fourth-degree felony under

New Mexico law.   N.M.S.A. § 30-22-5(B)(2).   See State v. Ramirez, 2018-NMSC-003 ¶¶ 14-15,

409 P.3d 902, 908-09 (concluding that, when a gun that fired the casings found at the crime scene

was recovered "not far from where police officers first encountered" the defendant, there was

sufficient evidence to support a tampering-with-evidence conviction with an underlying charge of

aggravated assault with a deadly weapon).   Because Platero attempted to hide the gun that he had

just pointed at Padilla, the Court concludes by a preponderance of the evidence that Platero

tampered with evidence, and that the violation is a felony under New Mexico law.   See N.M.S.A.

§ 30-22-5(B)(2).   The Court concludes, therefore, that Platero used or possessed a firearm "in

connection with" felony tampering with evidence.   U.S.S.G. § 2K2.1(b)(6)(B).

     **IT IS ORDERED** that the Objection in the Defendant's Objections to PSR, filed February

16, 2021 (Doc. 32), is overruled.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Fred J. Federici
  Acting United States Attorney
Timothy Dale Trembley
  Assistant United States Attorney
United State Attorney's Office
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Douglas E. Couleur
Douglas E. Couleur, P.A.
Santa Fe, New Mexico

      *Attorney for the Defendant*